John James OUELLETTE,
Petitioner, Appellant,

v.

UNITED STATES of America,
Respondent, Appellee.

No. 88–1367.

United States Court of Appeals,
First Circuit.

Heard Oct. 6, 1988.
Decided Nov. 23, 1988.

---

Michael S. Solender, Yale Law Student, New Haven, Conn., with whom John L. Pottenger, Jr., Stephen Wizner, Shelley Geballe, Mary A. McCarthy, Robert A. Solo-mon and Jerome N. Frank Legal Services Organization were on brief for petitioner, appellant.

Margaret D. McGaughey, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., and Joseph H. Groff, III, Asst. U.S. Atty., were on brief for respondent, appellee.

Before CAMPBELL, Chief Judge, TIMBERS,* Senior Circuit Judge, and TORRUELLA, Circuit Judge.

TIMBERS, Circuit Judge:

John James Ouellette ("petitioner") appeals from an order entered February 11, 1988 in the District of Maine, Gene Carter, *District Judge*, denying without a hearing petitioner's motion pursuant to 28 U.S.C. § 2255 (1982) to vacate his conviction and sentence on the ground that his guilty plea was involuntary due to ineffective assistance of counsel. Petitioner asserts that counsel had misrepresented to him that, by pleading guilty to a drug offense, he would not be required to "cooperate" with the government thereafter.

The district court found that counsel was not ineffective and did not cause any "prejudice" to petitioner. On appeal, petitioner claims as error the district court's findings as to effectiveness of counsel, prejudicial effect, and voluntariness of the plea. Petitioner also claims as error the denial of an evidentiary hearing on his motion.

For the reasons set forth below, we affirm.

I.

We shall summarize only those facts believed necessary to an understanding of the issues raised on appeal.

Petitioner was indicted in the District of Maine at Portland on January 25, 1985 for possession with intent to distribute a substance containing cocaine, a Schedule II substance, in violation of 21 U.S.C. § 841(a)(1) (1982). From January through June 1985, discussions between the govern-

---

* Of the Second Circuit, sitting by designation.

ment, petitioner and his court-appointed attorney, Thomas R. Downing ("Downing") were conducted regarding the government's desire for petitioner to cooperate in on-going drug investigations. The government had indicated that cooperation would be required in return for any plea agreement. Petitioner steadfastly declined to agree to cooperate, fearing for both his own safety and that of his family and relatives due to threats made against himself and against his relatives.

On June 24, 1985, petitioner received a letter from Downing which is the basis for the instant motion. In part, the letter read:

"I have discussed with the U.S. Attorney, again, your entry of a plea of guilty and I would certainly recommend that you do that. The reason I suggest that is that they are no longer requiring that you cooperate with them. We would simply make the plea to the Court and have the judge sentence you based on a pre-sentence report which would be conducted."

Petitioner contends that primarily on the basis of this letter he chose to appear before the district court on July 10, 1985 to change his plea to guilty. At this Rule 11 hearing, the district judge extensively questioned petitioner and his counsel, Downing, regarding, among other things, the voluntariness of the plea, whether there were any plea agreements, whether petitioner was satisfied with his counsel and the factual basis for the plea. In response to a question about plea agreements, petitioner answered that there were none, a fact thereafter confirmed by his counsel. Having been satisfied that petitioner understood his rights and the consequences of pleading guilty, the court accepted the plea.

At sentencing on July 30, 1985, statements by Downing, petitioner, petitioner's mother, assistant U.S. Attorney Joseph H. Groff, III ("Groff"), and a pre-sentence investigation ("PSI") report were introduced. During the hearing, the judge commented on the fact that petitioner had not given "any significant level of cooperation to the government" and asked Downing "[I]s there any reason why [petitioner] has elected not to cooperate with the government after pleading guilty?", to which Downing replied:

"I don't think that the option to cooperate after pleading guilty was something that was presented to us as an option. There had been discussions prior to the plea early on in the case whether he would be willing to cooperate, and frankly because of his concerns for his personal safety [he] was not willing to do so."

In response to further questioning by the court regarding cooperation with the government, Downing again indicated that he had not had any discussion with the government regarding cooperation after the plea. At no time during this hearing did petitioner express to the court his belief that he had been misled as to the extent of cooperation with the government required of him.

At the hearing's conclusion, petitioner was sentenced to 12 years imprisonment, to be followed by a 3 year mandatory special parole term. The judge indicated that petitioner's failure to cooperate with the government was one of the factors he had taken into account in determining the sentence to be imposed. Immediately after sentencing, Groff indicated to Downing that petitioner would be subpoenaed the next day to testify before a grand jury.

On July 31, 1985, petitioner received a subpoena to testify before a grand jury, but he refused to testify even after being granted immunity. Petitioner was found in civil contempt and ordered imprisoned until he testified or for the life of the grand jury, but in any event for a period not to exceed eighteen months. On December 5, 1985, a motion to reduce sentence pursuant to Fed.R.Crim.P. 35 was denied by the district court. This was affirmed by this Court in a per curiam opinion. *United States v. Ouellette*, No. 85–2028, slip op. (1st Cir. April 30, 1986). On March 27, 1987, petitioner completed his term of incarceration for civil contempt and began serving his 12 year sentence for the cocaine offense.

In December 1987, almost two and one-half years after his sentencing, petitioner

filed his § 2255 motion challenging the voluntariness of his guilty plea on the ground that Downing had rendered ineffective assistance of counsel. No hearing was held. The only evidence offered by petitioner was the motion itself and a copy of the June 24, 1985 letter to him from Downing.

In a Memorandum and Order dated February 11, 1988, the district court denied the motion, finding that, although the motion was facially valid, there was an insufficient showing under the law of *Hill v. Lockhart*, 474 U.S. 52 (1985), either that petitioner had received ineffective assistance of counsel or that he had been prejudiced. From the judgment entered on that order, petitioner, who has been incarcerated at Danbury, Connecticut, has taken the instant appeal.

For the reasons which follow, we affirm.

## II.

The basis for petitioner's motion is his contention that his attorney misrepresented a determinative aspect of an alleged plea agreement with the government—specifically that the government would no longer require petitioner to cooperate in any way in its investigations. Petitioner contends that he understood the statement in Downing's June 1985 letter to him that the government is "no longer requiring that you cooperate with them" to mean that he would not be required to testify at any time before *or after* he pled guilty. Petitioner asserts that, in addition to the letter, Downing also orally represented to him that such was the case.

Petitioner states that prior to receiving Downing's letter he had declined to plead guilty while the government was requiring his cooperation because he feared for the safety of himself and others. Once he understood that cooperation with the government was not required, he then chose to plead guilty. As stated above, however, immediately after sentencing he was subpoenaed before a grand jury and thereafter was imprisoned for civil contempt for his refusal to testify. Thus, petitioner concludes, because of Downing's "misrepresentation" to him that his cooperation with the government was not required, when in fact it was, he was prevented by ineffective assistance of counsel from making a "voluntary and informed decision to plead guilty".[1]

As a remedy, petitioner proposes either that he be allowed to withdraw his guilty plea or that he be given "credit" for the time he was imprisoned on the civil contempt charge. Alternatively, he seeks a remand to the district court for an evidentiary hearing on his § 2255 motion.

One of the important purposes of the searching inquiry required by Fed.R.Crim. P. 11 before a guilty plea can be accepted is the finality of litigation. *Lockhart, supra,* 474 U.S. at 58; *United States v. Timmreck,* 441 U.S. 780, 784 (1979). It is partly for this reason that petitioner must present valid reasons why he should be relieved of his statements at a Rule 11 hearing in order to "overcome the presumption of regularity which the record ... imports". *Walker v. Johnston,* 312 U.S. 275, 286 (1941). *See also United States v. Butt,* 731 F.2d 75, 80 (1st Cir.

---

1. Petitioner further claims ineffective assistance of counsel on the ground that Downing misled him into believing that petitioner's refusal to cooperate with the government from January to June 1985 would not be taken into account by the district judge at sentencing. In fact, at sentencing the district judge specifically stated that petitioner's lack of cooperation was a substantial factor in his decision to impose a harsh sentence.

This aspect of petitioner's ineffective assistance of counsel claim, however, must be rejected outright. As the district court correctly observed, the latter part of Downing's June 1985 letter to petitioner clearly warned petitioner that he would have to explain to the judge his failure to cooperate with the government. The pertinent part of the letter reads as follows:
"I want you to think very carefully about changing your plea in this case and having the judge sentence you based on your representations to the Court about why you can't cooperate because you, obviously, fear for your personal safety but that you are prepared to take your lumps and get your life back in order."
This claim by petitioner clearly is without merit because it is directly refuted by the very document petitioner relies on in making his primary claim of ineffective assistance of counsel.

1984); *Crawford v. United States*, 519 F.2d 347, 350 (4th Cir.1975), *cert. denied*, 423 U.S. 1057 (1976), *overruled on other grounds, United States v. Whitley*, 759 F.2d 327 (4th Cir.), *cert. denied*, 474 U.S. 873 (1985).

█ Here, petitioner fails to provide this Court with valid reasons why the extensive record in this case—including not only the Rule 11 hearing but also the sentencing hearing, the PSI report, the immunity and civil contempt hearings and the Rule 35 proceeding—is to be disregarded. There is virtually no support for petitioner's claims that there was a plea agreement. Furthermore, even if Downing did lead petitioner mistakenly to believe there was an agreement or understanding with the government, sufficient clarification was provided petitioner to enable him to express to the district court in a timely manner his misunderstanding in order to rectify the situation. Petitioner was provided with more than a dozen opportunities to bring such misunderstanding or misrepresentation to the attention of the district court, yet he failed to assert the claim until the filing of his § 2255 motion almost two and one-half years after sentencing. This failure to act draws into serious question the validity of petitioner's claims.

At the change of plea hearing conducted pursuant to Fed.R.Crim.P. 11, petitioner and Downing both indicated to the court that the guilty plea was being made for no reason other than petitioner's actual guilt. The court specifically asked whether anyone had threatened petitioner or attempted to induce him to enter the plea, to which petitioner replied "no". The court also asked whether there was any plea agreement in the case, to which both the government and defense counsel responded that there was no such agreement. Twice more, petitioner was asked by the court whether anyone had made promises to him or had induced him to plead guilty and twice again petitioner replied "no". Based on the record of the Rule 11 hearing it is clear that there was no agreement.

It also is clear that, if there had been any such agreement, petitioner had ample opportunity to so inform the court. Before the court began questioning petitioner, it informed him that he would be expected to give truthful responses and that, if he did not understand anything during the proceedings, he should interrupt. Petitioner in fact did interrupt the proceedings at one point to clarify a point. It is apparent that, while petitioner was accorded, and in fact exercised, his right to clarify matters, he never indicated to the court that, contrary to his responses to the court's questions, there was an agreement with the government.

Furthermore, any claim that petitioner made false statements at the Rule 11 hearing or that his attorney instructed him how to answer the court's questions, *see Butt, supra*, 731 F.2d at 80, is strongly refuted by the events at subsequent proceedings and by petitioner's acknowledgment at the Rule 11 hearing that he was "required to answer truthfully [the district court's] questions". Also, contrary to what petitioner now asserts, the Rule 11 proceeding was a searching inquiry and not a boilerplate hearing. In short, nothing at the Rule 11 hearing supports petitioner's position; indeed, the record contradicts it.

Petitioner cites *United States v. Giardino*, 797 F.2d 30 (1st Cir.1986), for the proposition that his statements at the Rule 11 hearing cannot be considered as contradicting his current position because it was not until *after* the hearing that he became aware of Downing's "misrepresentation". While petitioner's state of mind at the Rule 11 hearing may have been as he asserts, events subsequent to the time he claims he was first made aware of his true situation continue to contradict his current position.

During sentencing, as stated above, the court asked Downing why petitioner had elected not to cooperate with the government after pleading guilty. Downing replied that such option to cooperate after the guilty plea had not been presented to him or his client. Downing, however, also observed, "Having pled guilty I'm sure that [petitioner] will be subpoenaed in front of the grand jury and will either be forced

to testify or not depending on how he views the situation at that point".

Shortly thereafter the government made it clear to petitioner and Downing that it would be requiring petitioner to testify before a grand jury, adding that "[t]his has all been explained to [petitioner] and his counsel". No objection or comment was made by either petitioner or Downing in response to this statement. Nor was there any response to the government's notice to Downing on the record immediately following sentencing that petitioner would be subpoenaed the next day to testify before a grand jury. Such failure on the part of petitioner to voice to the court any concern about the course of events is directly at odds with his present contention that the record does not contradict his position.

Clearly, the events at sentencing left no reasonable basis for petitioner to doubt, if indeed he ever doubted, that there was no agreement with the government regarding cooperation. The PSI report, submitted to the district judge at sentencing, also indicates that there was no plea agreement with the government. Furthermore, it appears that during the subsequent immunity, civil contempt, and Rule 35 proceedings, petitioner never once indicated to the court that his plea had been induced by his attorney's misrepresentation as to a plea agreement with the government.

Contrary to what petitioner suggests in his brief in our Court, if he had refused to testify before the grand jury on the basis of what he genuinely believed to be "his 'right' not to cooperate", in all likelihood he would have said so at the immunity and civil contempt hearings. Instead, as he indicated to the district court and as he admits in his brief, his refusal to testify was based on his deep concern for the safety of himself and his family. Petitioner chose to serve 16 months in prison for contempt rather than invoke this purported agreement. Furthermore, it appears that during the Rule 35 proceedings there also was no mention by petitioner of his reliance on any agreement or "right" not to cooperate.

In short, petitioner has failed to come forward with any justification for overcoming the validity of his statements and conduct during the various proceedings, including the Rule 11 hearing, all of which point to the absence of any plea agreement and, more importantly, to the absence of any reasonable belief on the part of petitioner that there was any such agreement. *Butt, supra,* 731 F.2d at 80.

### III.

■ Assuming arguendo that petitioner were able to demonstrate persuasive reasons to overcome the validity of his statements at the Rule 11 hearing, petitioner nevertheless has failed to demonstrate that he received ineffective assistance of counsel.

In *Lockhart,* the Supreme Court established a two-part test for determining whether assistance of counsel has been so ineffective as to justify the withdrawal of a guilty plea. First, petitioner must show " 'that counsel's representation fell below an objective standard of reasonableness' ". *Lockhart, supra,* 474 U.S. at 57 (quoting *Strickland v. Washington,* 466 U.S. 668, 687–88 (1984)). Second, petitioner must demonstrate "prejudice", i.e., "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial". *Lockhart, supra,* 474 U.S. at 59; *see also Giardino, supra,* 797 F.2d at 31–32; *Porcaro v. United States,* 784 F.2d 38, 40 (1st Cir.), *cert. denied,* 479 U.S. 916 (1986).

Downing's conduct did not fall below an objective standard of reasonableness. On the whole, his representation was well within "the wide range of reasonable professional assistance". *Strickland, supra,* 466 U.S. at 689. At the Rule 11 hearing Downing was well prepared and vigorously asserted petitioner's interests. Indeed, petitioner himself stated to the court that he was fully satisfied with counsel. *United States v. Kobrosky,* 711 F.2d 449, 452 (1st Cir.1983). At sentencing, Downing also vigorously asserted petitioner's interests. A review of the transcripts of both proceedings clearly indicates that counsel had an intimate familiarity with petitioner's

case and provided more than adequate representation.

The only arguably reasonable basis for petitioner's claim of ineffective assistance of counsel, therefore, is Downing's June 24, 1985 letter to him and Downing's alleged oral representations regarding cooperation with the government. On the whole, the letter constituted sound legal advice. It apprised petitioner of his various options and their likely consequences. It offered a reasonable recommendation for the most favorable course to pursue.

As for counsel's use of the word "cooperate", when read in the context of what occurred during the various proceedings in this case, it becomes clear that that meant voluntary cooperation before the plea and did not include compelled testimony following sentencing. As stated above, if petitioner at first was confused about this, sufficient clarification was provided at the very latest during sentencing. The fact that petitioner failed to question or object to the prospect of being compelled to testify on the ground that he had been misled by his attorney until the filing of his § 2255 motion two and one-half years after sentencing, despite numerous earlier opportunities to do so, indicates the spurious nature of his claim.

Our review of the finding by the district court as to the adequacy of counsel's representation is limited to the question whether that finding was clearly erroneous. *McCarthy v. United States*, 764 F.2d 28, 30 (1st Cir.1985) (quoting *United States v. DiCarlo*, 575 F.2d 952, 954-55 (1st Cir.), *cert. denied*, 439 U.S. 834 (1978)). In finding counsel to be adequate, the district court held that Downing's use of the term "cooperate" was at most "confusing and

deserving of later clarification", and that such clarification later was provided for petitioner. Our review of the record in this case, including the transcripts of the Rule 11 and sentencing hearings, satisfies us that the district court's finding was not "clearly erroneous".[2]

## IV.

■ We turn finally to the issue of whether the district court should have conducted an evidentiary hearing on petitioner's motion. Section 2255 provides that a petitioner is entitled to an evidentiary hearing on his motion unless "the motion and the files and records of the case conclusively show that the [petitioner] is entitled to no relief. . . .". 28 U.S.C. § 2255 (1982). *Machibroda v. United States*, 368 U.S. 487, 494 (1962); *Butt, supra*, 731 F.2d at 77. We previously have held that no hearing is required where the district judge is thoroughly familiar with the case as, for example, when he presides at both a change of plea hearing and sentencing. *McCarthy, supra*, 764 F.2d at 31–32; *DiCarlo, supra*, 575 F.2d at 954; *see also United States v. Acevedo–Ramos*, 619 F.Supp. 570, 578 (D.P.R.1985), *aff'd*, 810 F.2d 308 (1st Cir. 1987).

While the district court found as a preliminary matter that petitioner's claims were facially valid, it nonetheless rejected the claims without a hearing, finding them to be conclusively contradicted by the record. *Butt, supra*, 731 F.2d at 77; Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts. In this case, disposition without a hearing was appropriate. The particular district judge involved was thoroughly familiar with the record, having presided over the Rule 11, immunity and civil con-

---

**2.** Since we agree with the district court's finding of adequacy of counsel, we do not reach the question of prejudice. We note, however, our serious reservations about petitioner's claim that, but for counsel's "misrepresentation", he would not have pled guilty but instead would have proceeded to trial. Our reservations stem from the substantial case the government had against petitioner as evidenced by Groff's statements at sentencing, and in view of the following statements by Downing in his June 1985 letter to petitioner:

"I see absolutely no chance of you winning at trial. The case is absolutely straightforward and once the evidence of the cocaine is in the jury is going to convict you in about thirty seconds flat.

.     .     .

I firmly believe that if you admit your guilt . . . and tell the judge that you are sorry for what you did, that he would give you a much more lenient sentence than if this case were to go to trial and you would appear at sentencing after having been found guilty by a jury."

tempt proceedings, having imposed sentence, and having ruled on the Rule 35 motion, as well as on the instant § 2255 motion. Petitioner advances no compelling reason for requiring an evidentiary hearing where a district judge had this extent of involvement in a case and where the record so conclusively contradicts the allegations. It is apparent that an evidentiary hearing would have added little or nothing to the present extensive record. We conclude that disposition of this motion without a hearing was not error.[3]

### V.

To summarize:

We hold that petitioner's guilty plea was not rendered involuntary by reason of the asserted ineffective assistance of counsel and that the district court did not err in ruling on the motion without an evidentiary hearing.

AFFIRMED.

---

**3.** Since we affirm the district court's denial of the § 2255 motion, the viability of petitioner's proposed remedies, other than a remand for an evidentiary hearing, need not be addressed. Furthermore, we need not address the government's argument that petitioner has not demonstrated that it would be fair and just to withdraw his plea. *Kobrosky, supra,* 711 F.2d at 454. We also find the government's argument that the instant motion has been precluded by the prior Rule 35 proceeding to be without merit because, as stated above, it appears that the issue of ineffective assistance of counsel was raised for the first time in the instant § 2255 proceeding.